Bethlehem Steel Company (Pennsylvania), Transferee v. Commissioner.
Bethlehem Steel Co. v. Commissioner
Docket No. 16605.
United States Tax Court
1950 Tax Ct. Memo LEXIS 91; 9 T.C.M. (CCH) 864; T.C.M. (RIA) 50233; September 28, 1950
*91 George G. Tyler, Esq., for the petitioner. Francis X. Gallagher, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Petitioner disputes liability as transferee for deficiencies against Atlas Steel Barrel Corporation of $206,046.66 in income tax and $77,946.22 in declared value excess-profits tax for 1943. The principal issue is whether Atlas Steel Barrel Corporation realized taxable gain by reason of exchanges and sales of stock by its shareholders which were followed by liquidation. Some of the facts were stipulated. Findings of Fact The stipulated facts are hereby found. Atlas Steel Barrel Corporation, hereinafter called Atlas, a New Jersey corporation, filed its returns for 1943 with the collector for the fifth district of New Jersey. Prior to its dissolution, Atlas was engaged in manufacturing steel barrels, drums, and other containers. In August or September 1943 Robert Campbell, a stockholder of Atlas, acting on behalf of all of its stockholders, entered into negotiations with certain officers of Bethlehem Steel Corporation, hereinafter called the Steel Corporation, with a view towards the exchange of Atlas stock for *92 voting stock of the Steel Corporation. The Atlas stockholders were interested only in a tax-free exchange of their stock for Steel Corporation stock, and a sale of the assets of Atlas was never considered. Prior to and on September 14, 1943, the officers and directors of the Steel Corporation did not contemplate the liquidation of Atlas. At that time neither the Steel Corporation, which is a holding company, nor any of its subsidiaries was engaged in the manufacture of steel barrels. On September 14, 1943, the Steel Corporation, Atlas, and all of the stockholders of Atlas, entered into an agreement called a "Memorandum of Agreement and Plan of Reorganization," providing in brief as follows: Atlas represented that a certain balance sheet set forth a correct statement of its financial condition, and that its total stock issued and outstanding was 1,195 shares of common stock, and Atlas agreed, pending consummation of the reorganization, to conduct business in its normal way without either incurring unusual liabilities or making extraordinary expenditures or declaring dividends or issuing additional shares of stock without the consent of the Steel Corporation. The Atlas stockholders *93 agreed to deliver all their stock to the Steel Corporation in exchange for 7 shares of 7 per cent cumulative preferred stock and 6 2/3 shares of common stock of the Steel Corporation for each share of Atlas so transferred. The Steel Corporation agreed to consummate the agreement not later than a specified date which was later extended. In early October 1943 the Steel Corporation commenced negotiations for, and in November 1943 it acquired, stock in Rheem Manufacturing Company which was engaged in the manufacture of steel barrels. A decision to dispose of the stock of Atlas was made about that time by the officers of the Steel Corporation as a result of advice of counsel that ownership of stock both in Atlas and in its competitor Rheem Manufacturing Company might be regarded as a violation of section 7 of the Clayton Act. On December 29, 1943, the Steel Corporation delivered certificates endorsed in blank, and bearing the requisite stock transfer stamps, for 8,365 shares of its preferred stock and 7,966 2/3 shares of its common stock which (with an additional one-third of a share of which it also delivered) it had purchased for the purpose on the New York Stock Exchange after September 14, 1943, for *94 $1,448,589.71, to the respective stockholders of Atlas, pro rata, according to their respective holdings in Atlas. The Steel Corporation received from the individual owners certificates endorsed in blank, and bearing the requisite stock transfer stamps, for all of the outstanding shares of the capital stock (1,195 shares) of Atlas, plus $20, which amount represented a payment to the Stee Corporation for the additional one-third of a share of its common stock. On the same day all of the officers and directors of Atlas resigned and persons representing the interests of the Steel Corporation were elected as officers and directors to fill the vacancies. Petitioner, a Pennsylvania corporation a subsidiary of the Steel Corporation, was engaged chiefly in the business of manufacturing and selling iron and steel products. On December 30, 1943, the Steel Corporation offered to sell and the petitioner agreed to buy 1,195 shares of the capital stock of Atlas for $1,448,569.71, plus the cost of the necessary stock transfer stamps. On the same day the Steel Corporation delivered to petitioner certificates endorsed in blank for the 1,195 shares of Atlas stock, and petitioner paid $1,448,569.71, *95 plus the cost of the requisite stock transfer stamps. On the same day all of the officers and directors of Atlas resigned and persons representing the interests of petitioner were elected to fill the vacancies. On December 31, 1943, the board of directors of petitioner adopted resolutions that Atlas be dissolved and approved a Plan of Liquidation. On the same date the board of directors of Atlas authorized and directed its officers to carry out the liquidation and dissolution in accordance with that plan. On the same day Atlas conveyed all its real property to petitioner. Bethlehem Steel Company, a Delaware corporation and subsidiary of the Steel Corporation, hereinafter called Delaware, handled sales of steel products. Petitioner considered it desirable that Delaware should handle sales of the products of the business theretofore conducted by Atlas, and that the accounts and bills receivable of Atlas should pass to Delaware upon the liquidatio of Atlas. On January 3, 1944, petitioner offered to sell, and on January 4, 1944, Delaware agreed to buy, 150 shares of Atlas stock at a price equal to the cost of said shares to petitioner, namely, $181,843.50, plus the cost of the requisite *96 stock transfer stamps. On January 4, 1944, Delaware paid that sum to petitioner against delivery of the certificates. By an "Assignment" dated January 7, 1944, Atlas transferred to Delaware all of the accounts and bills receivable of Atlas as at the close of business on December 31, 1943, and the 150 shares of Atlas stock then owned by Delaware were thereupon redeemed and canceled. By a "Bill of Sale and Agreement," dated January 7, 1944, Atlas assigned and transferred to petitioner all the remaining property and assets of Atlas, and the 1,045 shares of Atlas stock then owned by petitioner were thereupon redeemed and canceled. On January 10, 1944, the Secretary of State of New Jersey issued a certificate of dissolution of Atlas in accordance with the laws of that state, and Atlas became dissolved. In a notice of transferee liability mailed to petitioner on September 9, 1947, respondent determined deficiencies against Atlas as a result of an adjustment based upon the following ground: "It has been determined that the Atlas Steel Barrel Corporation realized a gain of $830,484.07 during the taxable year 1943 in connection with the transfer of its properties to the Bethlehem Steel *97 Company (Pennsylvania)." Opinion This is a companion case to Robert Campbell, et al., decided this day. In this proceeding respondent seeks to charge Atlas as though a sale of its assets had taken place under the doctrine of , and to follow the property into the hands of petitioner as a transferee. For the same reasons which led us to reject a similar claim against the so-called new stockholders in , we must disapprove respondent's determination here. Decision will be entered for the petitioner.